IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARNEICE KATHRINE HALL-JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 18-cv-05553-MMC<br><br>**ORDER GRANTING MOTION TO DISMISS; DISMISSING COMPLAINT**<br><br>Re: Dkt. No. 21 |

Before the Court is defendants City and County of San Francisco ("the City") and Micki Callahan's ("Callahan") Motion to Dismiss, filed December 12, 2018, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Carneice Kathrine Hall-Johnson has filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

Plaintiff alleges that, on November 6, 2017, Callahan, the Director of the City's Department of Human Resources, "held a post-deprivation hearing with [plaintiff] . . ., via telephone conference, to reconsider [plaintiff] for entry into a training program and to receive back benefits from being dismissed from her as-needed position with [the City]." (See Compl. ¶ 10.) Plaintiff further alleges that, during the telephone conference, Callahan "assured [plaintiff] . . . that she would voluntarily provide [her] with her former

---

[1] By order filed January 28, 2019, the Court took the motion under submission.

training position . . . [with] back pay." (See id. ¶ 11) According to plaintiff, Callahan also "apologized to [plaintiff], and said that she had been discriminated against, and the reason was for her race and [her developmental mental] disability." (See id. ¶ 12.)

Plaintiff alleges that Callahan, despite having made the above-referenced promises, thereafter "den[ied] to reinstate [her] into the federally funded training program, and disallow[ed] her to compete for government employment" due to her race and developmental mental disability. (See id. ¶¶ 28-29, 33-34.)[2] In particular, plaintiff alleges that Callahan told her she "could never pass a civil service examination, and therefore [she] could never compete for a permanent position through the City and County of San Francesco's [sic] Civil Service process and at no time [would] the City . . . allow [her] to do that because of the [C]ity's municipal policy." (See id. ¶ 12).

Based on the above, plaintiff brings her Complaint in the instant action, by which she asserts defendants have discriminated against her based on her race and disability, and thereby violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act ("ADA") and section 602 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d. (See id. ¶¶ 13, 26-36.)

By the instant motion, defendants seek an order dismissing plaintiff's Complaint in its entirety.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

---

[2] In the Complaint, plaintiff does not challenge her initial dismissal from the training program, only her lack of reinstatement.

2

allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the complaint. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, however, may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, a district court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referenced in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

**DISCUSSION**

Defendants contend the Complaint is subject to dismissal because, among other reasons, plaintiff's claims are barred by the doctrine of res judicata. Specifically, defendants contend, res judicata applies in the instant action because "the claims raised

3

in the present action are the same claims as the claims finally adjudicated by this Court in" Hall-Johnson v. City and County of San Francisco, C 18-1409-MMC ("Hall-Johnson I") (see Mot. at 1:9-10).

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." See Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (internal quotation and citation omitted); see also Costantini v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir. 1982) (holding res judicata "bar(s) all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action" (internal quotation, citation, and alteration omitted)). Res judicata applies "whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." See Owens, 244 F.3d at 713 (internal quotation and citation omitted).

### A. Identity of Claims

For purposes of res judicata, courts, in evaluating "whether two suits involve the same claim or cause of action," consider "four criteria," namely: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." See Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005). "These criteria are not applied mechanistically." Howard v. City of Coos Bay, 871 F.3d 1032, 1039 (9th Cir. 2017) (internal quotation and citation omitted). The first criterion, for example, "is the most important," see id. (internal quotation and citation omitted); indeed, the Ninth Circuit has "often held the common nucleus criterion to be outcome determinative under the first res judicata element," see Mpoyo, 430 F.3d at 988. The Court next turns to the above-referenced four criteria.

As noted, the Ninth Circuit "use[s] a transaction test to determine whether the two

4

suits share a common nucleus of operative fact." See Mpoyo, 430 F.3d at 987 (listing, as first criterion, "whether the two suits arise out of the same transactional nucleus of facts"). "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." Id. (internal quotation and citation omitted).

Here, defendants contend plaintiff's claims in the instant action and Hall-Johnson I "involve the exact same transaction and occurrence." (See Reply at 2:11-12.) As set forth below, the Court agrees.

In both Hall-Johnson I and the instant action, plaintiff asserts claims against the City and Callahan predicated on her November 6, 2017, telephone conference with Callahan. As noted, plaintiff's claims in the instant action are based on allegations that Callahan, during the above-referenced conference, refused to "reinstate [plaintiff] in the federally funded training program" and thereby "disallow[ed] her to compete for government employment" on the basis of her race and disability. (See Compl. ¶ 28; see also id. ¶¶ 32-34.) Similarly, in Hall-Johnson I, the sole claim asserted against Callahan is predicated on the November 6, 2017, telephone conference, specifically an allegation that, Callahan, during said conference, "refus[ed] to hire" plaintiff in a permanent position because of her race and disability and thereby "discriminated against [her] in employment and opportunities for employment." (See RJN,[3] Ex. A ¶ 122 (second set); see also id. ¶ 108 (first set).)[4,5]

---

[3] Defendants' unopposed request for judicial notice of the Third Amended Complaint ("TAC") and certain other documents filed in Hall-Johnson I is hereby GRANTED.

[4] The above-referenced Exhibit A is the TAC filed in Hall-Johnson I and includes a first set of 118 numbered paragraphs, followed by a second and third set, beginning again, respectively, with a ¶ 81 and a ¶ 177.

[5] Although the claim asserted against Callahan does not expressly identify the event on which it is based (see id. ¶ 122 (second set)), the only allegations in the TAC filed in Hall-Johnson I that pertain to Callahan are those that describe her conduct during the November 6, 2017, telephone conference (see id. ¶ 108 (first set)).

1   Although, in Hall-Johnson I, plaintiff also asserted a number of claims against the
2   City and her former supervisor, Laura Moeslein ("Moeslein"), based on events that took
3   place in 2015 (see id. ¶¶ 51-104 (first set); see also id. ¶¶ 81-120 (second set)), those
4   allegations further illustrate the connection between the two cases. In particular, plaintiff
5   alleged Moeslein informed her that the City, based on her race and disability, "refus[ed] to
6   take [her] on as a permanent hire" (see id. ¶ 70 (first set)) and that the following week,
7   she "was terminated" from her as-needed position (see id. ¶ 103 (first set)), a component
8   of the training program, the completion of which program was a prerequisite for
9   permanent employment (see id. ¶¶ 55, 64 (first set)).

In sum, the two cases arise out of the "same transactional nucleus of facts," see Mpoyo, 430 F.3d at 987, and could have been "conveniently tried together," see id., not only because the claims against Callahan, as alleged in both actions, are based on a single telephone conference held on November 6, 2017, but also because they are premised on the same interrelated series of events. Specifically, the City's refusal to consider plaintiff for permanent employment in 2015 was the impetus for its decision to remove her from the training program in 2015 and to deny her reinstatement in 2017, which denial, in turn and in a circular fashion, resulted in her inability to qualify for permanent employment.

The second criterion also is satisfied. In Hall-Johnson I, the Court, by order filed September 18, 2018, dismissed the TAC in its entirety "without further leave to amend and with prejudice" (see RJN, Ex. C at 2:2) on the ground that all of the claims alleged therein were either time-barred or not cognizable. (See id. at 1:21-22 (adopting Report and Recommendation); see also RJN, Ex. B at 14:1-2 (recommending dismissal of TAC because "all of [the] claims were time-barred (to the extent they were cognizable claims to begin with)".) In the instant action, plaintiff once again seeks to hold the City and Callahan liable for Callahan's conduct during the above-referenced telephone conference. Under such circumstances, if the instant action were allowed to proceed, defendants' "freedom from liability" for such conduct, which was established in Hall-

Johnson I, "could be impaired." See Costantini, 681 F.2d at 1202; see also Eblovi v. Deutsche Bank Nat'l Trust Co., 2013 WL 5645150, at *2 (N.D. Cal. Feb. 14, 2014) (holding, where first action for improper foreclosure was dismissed, prosecution of second action predicated on same foreclosure "could impair [d]efendants' freedom from liability for the foreclosure [as] established in [first action]").

The third and fourth criteria likewise are satisfied. Both cases are based on infringement of the same right, specifically, the right to pursue and secure, with the City, employment opportunities free from race and disability discrimination. See Nnachi v. City & Cty. of San Francisco, 2010 WL 3398545, at *5 (N.D. Cal. Aug. 27, 2010) (holding where first action alleged age discrimination in violation of Title VII of the Civil Rights Act and second action alleged violation of Age Discrimination Employment Act of 1967, second action barred by res judicata; finding both actions "involve[d] infringement of the same right – [p]laintiff's alleged right to be free from discrimination from his employer"). Moreover, both cases would require presentation of the same evidence, specifically, evidence regarding the content of the November 6, 2017, telephone conference, as well as evidence pertaining to the City's alleged "municipal policy" (see Compl. ¶ 9; see also RJN, Ex. A ¶ 107 (second set)) of race and disability discrimination.

Accordingly, all four of the criteria bearing on whether the two cases share an identity of claims having been satisfied, the first element of res judicata is satisfied.

**B.    Final Judgment on the Merits**

"An involuntary dismissal generally acts as a judgment on the merits for the purposes of res judicata, regardless of whether the dismissal results from procedural error or from the court's considered examination of the plaintiff's substantive claims." In re Schimmels, 127 F.3d 875, 885 (9th Cir. 1997); see also Nnachi, 2010 WL 3398545 at *5 (holding "[d]ismissal of an action with prejudice, or without leave to amend, is considered a final judgment on the merits").

As noted above, plaintiff's TAC in Hall-Johnson I was involuntarily dismissed without further leave to amend and with prejudice.

7

Accordingly, the second element of res judicata is satisfied.

### C. Identity or Privity Between the Parties

"The third element of the res judicata test requires identical parties or privies in the two actions." Mpoyo, 430 F.3d at 988.

Hall-Johnson I and the instant action involve identical parties because, in both cases, plaintiff identified herself as the complaining party and named Callahan and the City as defendants. (Compare Compl. ¶¶ 7-8 with RJN, Ex. A at ¶¶ 7-8 (first set).)

Accordingly, the third element of res judicata is satisfied.

## CONCLUSION

For the reasons set forth above, defendants' Motion to Dismiss is hereby GRANTED and the Complaint is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated: March 19, 2019

MAXINE M. CHESNEY
United States District Judge